USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/11/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CVAR VON HABSBURG GROUP, LLC,

Plaintiff,

v.

DECURION CORPORATION and ELK MOUNTAIN RESORT, LLC

Defendants.

**OPININON AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

18 Civ. 11218 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiff Cvar Von Habsburg Group, LLC ("CVHG" or "Plaintiff") seeks recovery for accounts stated in connection with consulting services it provided to Defendants Decurion Corporation ("Decurion") and Elk Mountain Resort, LLC ("Elk Mountain") (collectively, "Defendants"). Plaintiff now moves for summary judgment on all claims. For the reasons that follow, Plaintiff's motion is granted.

**BACKGROUND**

CVHG, which was founded by Dr. Margeaux Cvar, provides specialized business evaluation services. Decurion is a holder of real estate and operating companies. It is the parent company and sole member of Elk Mountain. Over a period of years, Plaintiff provided consulting services to Decurion and its subsidiaries. Dr. Cvar also had a personal relationship with Michael R. Forman, who was the Chairman of the Board and CEO of Decurion until he passed away in January 2019.

To be paid for CVHG's services to Decurion and its subsidiaries, Dr. Cvar regularly provided invoices directly to Mr. Forman via fax, via mail, and/or personally. CVHG alleges that three invoices remain unpaid: 1) an invoice, dated July 25, 2012 (the "2012

Invoice"), charging $49,265 for strategic evaluations of movie theaters and snack bars owned by Decurion; 2) an invoice, dated February 4, 2013 (the "2013 Invoice"), charging $58,280 for services related to the potential operation of a resort; and 3) an invoice, dated October 15, 2015 (the "2015 Invoice"), charging $84,872 for updating a business plan related to a potential sale of Elk Mountain. According to fax cover sheets and an affidavit submitted by Dr. Cvar, Dr. Cvar sent all three invoices to Mr. Forman's personal fax number. Defendants never objected.

According to Defendants, CVHG did not perform the work for which it now seeks payment. Defendants argue that the three invoices must be fraudulent because Defendants had stopped hiring CVHG by 2012, when the relationship between Dr. Cvar and Mr. Forman ruptured.[1] According to a declaration submitted by James D. Vandever (the "Vandever Declaration"), Vice-President and Counsel for Decurion, Mr. Forman never requested any services from Dr. Cvar after the breakdown of their relationship in 2012. According to Dr. Cvar, the rupture in the relationship with Mr. Forman was only temporary. Despite the temporary break in their personal communication, she says, their business relationship continued. Dr. Cvar provided examples of correspondence and checks the two exchanged through 2015.

Defendants cite other indicia, which they argue show fraud. They say most of the assets in the business division referenced in the 2012 Invoice were sold in 2008, and that Elk Mountain, the subject of the work for the 2013 Invoice and 2015 Invoice, ceased operations in 2009. CVHG disputes that the assets from the 2012 Invoice had been sold, noting that Decurion's website still lists multiple theaters as holdings to this day. Regarding Elk Mountain, CVHG acknowledges that the business was not operating but says CVHG performed work to

---

[1] In 2015, Dr. Cvar left a voicemail in which she chastised Mr. Forman for "desert[ing]" her "at the end of 2012" and for other personal and professional offenses. ECF No. 47, Ex. A. In an affidavit submitted in another case, Dr. Cvar asserted that Mr. Forman "broke off relations with [her]" in or about 2012. ECF No. 46, Ex. A, at 4.

position Elk Mountain for a prospective sale. Finally, Defendants believe the 2015 Invoice is copied and pasted from an invoice from 2000 (the "2000 Invoice"). CVHG responds that the two invoices only coincidentally bill the same amount.

CVHG brings three claims for account stated under New York law, one for each of the allegedly unpaid invoices. ECF No. 22. Following discovery, CVHG moved for summary judgment.

## DISCUSSION

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court "is . . . required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

Plaintiff seeks recovery for accounts stated. To establish a claim for account stated under New York law, a plaintiff must show that "(1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009). "The second and third requirements (acceptance of the account as correct and a promise to pay the amount stated) may

be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment.'" *Id.* (quoting *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999). The delivery of an invoice for services performed, and retention of same without objection, qualifies as an account stated. *Glassman v. Weinberg*, 154 A.D.3d 407, 408 (1st Dep't 2017); *White Diaomond C Morrison Cohen Singer & Weinstein, LLP v. Waters*, 13 A.D.3d 51, 51-52 (1st Dep't 2004).

In support of its motion, CVHG provides each of the three invoices and corresponding fax records. It also provides an affidavit in which Dr. Cvar explains her typical practice for billing Defendants and states that Defendants never objected to the invoices at issue. Defendants argue that the New York Dead Man's Statute, CPLR 4519, precludes Plaintiff from relying on Dr. Cvar's personal communications and transactions with Mr. Forman. The Dead Man's Statute "disqualifies parties interested in litigation from testifying about personal transactions or communications with deceased." *Poslock v. Teachers' Retirement Bd. of Teachers' Retirement Sys.*, 88 N.Y.2d 146, 150 (N.Y. 1996). "[E]vidence excludable under the Dead Man's Statute should not be used to support summary judgment." *Phillips v. Joseph Kantor & Co.*, 31 N.Y.2d 307, 313 (N.Y. 1972). However, the statute does not exclude documentary evidence of an interested party's dealings with the decedent. *Dawes v. J. Muller & Co.*, 176 A.D.3d 473, 474 (1st Dep't 2019). CVHG has produced documentary evidence of its regular billing practice, the three invoices at issue, and the type of work it performed for Defendants.

Defendants fail to refute Plaintiff's alleged facts with admissible evidence. Under Local Civil Rule 56.1, every paragraph in a moving party's statement of material facts "will be deemed to be admitted for purposes of the motion unless specifically controverted by a

correspondingly numbered paragraph in the statement required to be served by the opposing party." S.D.N.Y. Local Civ. R. 56.1(c). For the opponent, "each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." S.D.N.Y. Local Civ. R. 56.1(c). In Defendants' Local Rule 56.1 Response to Plaintiff's Statement of Material Facts ("Defendants' 56.1 Response"), ECF No. 49, Defendants do not cite a single item of evidence. For over half of the paragraphs in Plaintiff's Local Civ. R. 56.1 Statement of Material Facts ("Plaintiff's 56.1 Statement"), Defendants respond with a single word: "Deny."

Defendants' 56.1 Response is plainly insufficient. As a result, the facts in Plaintiff's Rule 56.1 Statement are deemed admitted. *See Teamsters Local 456 Pension, Health & Welfare, Annuity, Educ. & Training, Industry Advancement & Legal Servs. Funds v. CRL Transp., Inc.*, No. 18 Civ. 2056, 2019 WL 3960099, at *1 n.1 (S.D.N.Y. Aug. 22, 2019) ("Because Defendant fails to cite any evidence in support of its denials, Plaintiffs' 56.1 Statement is deemed admitted for purposes of the Motion."); *Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06 Civ. 5474, 2008 WL 857492, at *6 (S.D.N.Y. Mar. 31, 2008) ("Although the plaintiff asserts that many facts asserted by the defendant are 'denied,' they are actually deemed admitted where the plaintiff fails to cite to admissible evidence controverting the defendant's statements."); *Gallimore-Wright v. Long Island R.R. Co.*, 354 F. Supp. 2d 478, 488 (S.D.N.Y. 2005) (finding that where party fails to identify supporting evidence in its opposition to moving party's Rule 56.1 statement, "the Court is entitled to assume that there is none"). The admitted facts in Plaintiff's 56.1 Statement, supported by record evidence, show that CVHG presented that invoices at issue to Defendants for work performed by CVHG, and Defendants failed to object to

the invoices or pay the balances due. These facts are sufficient to prove Plaintiffs' three claims for accounts stated.

Even if I do consider the evidence presented by Defendants in their brief and supporting declarations,[2] none creates a genuine dispute of material fact. Defendants argue no liability for account stated exists because Plaintiff never performed the underlying work for which it is charging Defendants; instead, they say, Plaintiff created fraudulent invoices. Fraud, mistake, or other equitable considerations can prevent recovery for account stated. *LLT Int'l, Inc. v. MCI Telecomms. Corp.*, 69 F. Supp. 2d 510, 516-17 (S.D.N.Y. 1999). Still, "bald conclusory allegations of fraud, mistake and other equitable considerations are insufficient to defeat a motion for summary judgment." *Liddle, O'Connor, Finkelstein & Robinson v. Koppelman*, 215 A.D.2d 204, 204 (1st Dep't 1995).

Defendants raise three arguments to support their assertion of fraud: They state that Dr. Cvar's relationship with Mr. Forman became fractured prior to the time she would have performed the alleged work, business entities listed on the invoices were no longer operational or were no longer owned by Decurion at the relevant time, and one of the invoices appears to be copied and pasted from an earlier record. All three accusations are speculative and contradicted by evidence in the record.

First, while Dr. Cvar and Mr. Forman's relationship underwent various conflicts, evidence in the record establishes that they continued to communicate at the relevant times. For example, Mr. Forman wrote Dr. Cvar multiple checks in 2015. ECF No. 51, Ex. E. In a

[2] Even in the absence of citations to the record in Defendants' 56.1 Response, the Court may conduct a broader review of other documents supporting Defendants' opposition. *See Williams v. R.H. Donnelley Inc.*, 199 F. Supp. 2d 172, 173 n.1 (S.D.N.Y. 2002) ("[S]o as to not unduly prejudice plaintiff for her attorney's procedural error, we will deem the facts set forth in plaintiff's memorandum of law sufficient to satisfy Rule 56.1 to the extent that the rule is otherwise complied with. However, where a stated fact is nowhere controverted, it will be deemed admitted.").

handwritten letter from 2015, Mr. Forman said that he was looking forward to seeing Dr. Cvar. ECF No. 42, Ex. 4. Defendants, by contrast, do no cite any evidence showing that Mr. Forman and Dr. Cvar's relationship never resumed after the 2012 conflict.

Second, Defendants rely only on the unsupported claims of the Vandever Declaration to assert that Decurion had sold most of the assets referenced in the 2012 Invoice years prior. However, even the Vandever Declaration acknowledges that Decurion continued to hold some movie theaters. Plaintiff also provides evidence from Decurion's website that it still holds theaters today. ECF No. 51, Ex. B. Thus, even viewing the evidence in the light most favorable to the Defendants, nothing in the record would preclude CVHG from having performed analysis related to theaters and snack bars in 2012.[3] Similarly, nothing in the record rebuts CVHG's contention that it performed work on Elk Mountain in 2013 and 2015 to position Elk Mountain for a sale. There is no dispute that Elk Mountain was not operational at the time of the 2013 and 2015 Invoices, but the entity continued to exist and had assets to be sold. CVHG attached the 2015 business plan it prepared to show the services it performed. ECF No. 42, Ex. 13. Defendants do not address that point, that CVHG actually continued to perform services useful to Defendants.

Third, the only overlap between the 2015 Invoice and the 2000 Invoice is the total amount billed. The invoices otherwise appear completely different. *Compare*, ECF No. 42, Ex. 9, *with* ECF No. 42, Ex. 11. This does not support the speculation in the Vandever Declaration, which again does not cite any documentary evidence, that CVHG copied and pasted to generate a fraudulent invoice. In summary, even taking as true all of the evidence presented by Defendants,

[3] CVHG also produced a copy of a portfolio review for Decurion's theater holdings in the third quarter of 2012. ECF No. 42, Ex. 7. While the completed portfolio review postdates the 2012 Invoice, it supports CVHG's contention that its analysis of the theater holdings was ongoing in 2012.

Defendants have failed to rebut Plaintiff's showing that it is entitled to payment for the three invoices.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. The oral argument currently scheduled for January 9, 2020 is canceled. The Clerk is directed to terminate the open motion and enter judgment for the Plaintiff against Defendants Decurion Corporation and Elk Mountain Resort, LLC in the amount of $183,786.00, with interest and costs.

SO ORDERED.

Dated: December 10, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge